## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **Jean-Marie Cousinou, Individually and On Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| **v.** | |
| **Washington Prime Group, Inc., Louis Conforti, and Mark E. Yale,** | **JURY DEMAND ENDORSED HEREIN** |
| **Defendants.** | |

Plaintiff Jean-Marie Cousinou ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Washington Prime Group, Inc. ("WPG" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by WPG; and (c) review of other publicly available information concerning WPG.

### NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired WPG securities between November 5, 2020 and March 4, 2021, inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    WPG is a self-managed and self-administered real estate investment trust ("REIT") that owns properties and conducts operations through Washington Prime Group, L.P. ("WPG L.P."). WPG is the sole general partner and holds approximately 84.7% of the partnership interests of WPG L.P.

3.    On February 16, 2021, WPG disclosed that its operating partnership, WPG L.P., had "elected to withhold an interest payment of $23.2 million due on February 15, 2021 with respect to WPG L.P.'s outstanding Senior Notes due 2024," and that "WPG L.P. has a 30-day grace period to make the interest payment before such non-payment constitutes an 'event of default.'"  The Company further advised that, in an event of default, certain counterparties to the senior notes "could accelerate the outstanding indebtedness due . . . making such indebtedness due and payable, which would result in a cross-default with respect to some of WPG L.P.'s or the Company's other indebtedness."

4.    On this news, the Company's stock price fell $4.59, or 38%, to close at $7.49 per share on February 16, 2021, on unusually heavy volume.[1]

5.    Then, on March 4, 2021, Bloomberg reported that WPG "is preparing a potential bankruptcy filing as time runs out to avert default after it skipped an interest payment on its debt, according to people with knowledge of the plans."

6.    On this news, the Company's stock price fell $3.77, or 60%, to close at $2.51 per share on March 4, 2021, on unusually heavy volume.

7.    On March 16, 2021, after the market closed, WPG disclosed that it had entered into a forbearance agreement with respect to the Senior Notes due in 2024 and stated there was

---

[1] All share prices herein are adjusted to reflect the 1-for-9 reverse stock split effected on or about December 22, 2020.

substantial doubt as the Company's ability to continue as a going concern. The Company confirmed that it had engaged in discussions for a financial restructuring.

8. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that WPG's financial condition was deteriorating substantially; (2) that, as a result, there was substantial uncertainty about the Company's ability to meet its capital structure obligations as they became due; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff Jean-Marie Cousinou, as set forth in the accompanying certification, incorporated by reference herein, purchased WPG securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant WPG is incorporated under the laws of Indiana with its principal executive offices located in Columbus, Ohio.  WPG's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "WPG."

16.     Defendant Louis Conforti ("Conforti") was the Chief Executive Officer ("CEO") of WPG and WPG L.P. at all relevant times.

17.     Defendant Mark E. Yale ("Yale") was the Chief Financial Officer ("CFO") of WPG and WPG L.P. at all relevant times.

18.     Defendants Conforti and Yale (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material nonpublic information available to them, the Individual Defendants knew that the adverse facts specified

herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     WPG is a self-managed and self-administered real estate investment trust ("REIT") that owns properties and conducts operations through Washington Prime Group, L.P. ("WPG L.P."). WPG is the sole general partner and holds approximately 84.7% of the partnership interests of WPG L.P.

### Materially False and Misleading
### Statements Issued During the Class Period

20.     The Class Period begins on November 5, 2020. On that day, WPG announced its third quarter 2020 financial results in a press release that stated, in relevant part:

Highlights:

•     The Company has collected 87% of 3Q 20 rental income and associated charges adjusted for the applicable impact of COVID-19 lease amendments and related rent concessions;

•     Notwithstanding a challenging retail landscape as a result of the COVID-19 pandemic, year-to-date leasing volume exhibited a 7.0% YOY increase totaling 3.4M SF and 47% of new leasing volume was attributable to lifestyle tenancy;

•     The Company successfully executed amendments to its credit facilities during 3Q 20, which provides certain covenant relief through the third quarter of 2021;

•     The Company is actively negotiating specific measures with existing debt investors that would result in deleveraging of its balance sheet if execution is successful;

•     The Company ended 3Q 20 with $112M cash on hand;

•     As previously announced and subject to common shareholder approval, the Company intends to enter into a reverse common share split (1:9) by the end of the

year whereby nine of the existing common shares are to be converted to a single common share; and

- The Board of Directors declared the fourth quarter dividend for the Company's preferred shares.

\*　　\*　　\*

**Unsecured Indebtedness and Liquidity**

On August 17, 2020, the Company announced it entered into amendments with respect to its credit facilities, which will provide certain covenant relief through the third quarter of 2021 (the "Amendments"), further strengthening and supporting the Company's execution of its long-term business plan.

The Amendments will be partially collateralized by properties making up approximately half of the Company's previously unencumbered net operating income, with the Company having the ability to release the security starting in the third quarter of 2021 if certain financial conditions are met. The all-in interest rate, depending on total leverage levels, will range from LIBOR plus 2.35% to 2.60% with a LIBOR floor of 50 basis points. The Company was in compliance with all applicable covenants as of the end of most recently completed fiscal quarter that ended September 30, 2020.

***Additionally, the Company is actively working on measures with existing debt investors that would result in deleveraging of its balance sheet if execution is successful.*** When considering the amended financial covenant requirements and the positive impact from the potential deleveraging measures described above, the Company projects, based upon internal estimates that it will remain in compliance with these revised financial covenants along with other unsecured debt covenants. However, with the continued uncertainty caused by the COVID-19 pandemic, significant risks remain and any material adverse effect on our income and expenses could impact our ability to maintain compliance with our credit facility and bond covenants. Additionally, there can be no assurances of the terms or conditions that any such deleveraging transaction would include or that the Company will be able to consummate such transaction on a timely basis, or at all.

The Company ended 3Q 20 with $112M cash on hand and estimates its year end cash balance will be between $125M to $135M.

21.　　On November 6, 2020, WPG held a conference call in connection with the third quarter financial results, during which defendant Conforti assured that the Company's deleveraging efforts "in no way, shape, or form has anything to do with a bankruptcy or a corporate

restructuring, and if anything will serve as a testament to our operational abilities." Similarly, defendant Yale stated:

> Additionally, the company is actively working on measures with existing debt investors that would result in de-leveraging our balance sheet if execution as successful. And once again just to emphasize, these specific de-leveraging measures do not involve the negotiation restructuring support agreement or other arrangements in the context of a bankruptcy proceeding in any way whatsoever.

22. Also on November 6, 2020, after the market closed, WPG filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2020 (the "3Q20 10-Q"), affirming the previously reported financial results. Regarding WPG's liquidity and debt obligations, the report stated, in relevant part:

> Our ability to meet our obligations as they come due may be impacted by our ability to remain compliant with financial covenants in our unsecured debt arrangements or to obtain additional waivers or amendments that impact the related covenants. During the third quarter of 2020, we executed amendments to our Facility and December 2015 Term Loan (as defined in Note 6 - "Indebtedness") that provide certain covenant relief through the third quarter of 2021. The Company was in compliance with all applicable covenants as of the end of the most recently completed fiscal quarter ended that September 30, 2020. Additionally, the Company is actively working on measures with existing debt investors that would result in deleveraging of its balance sheet if execution is successful. ***When considering the amended financial covenant requirements and the positive impact from the potential deleveraging measures described above, the Company projects, based upon internal estimates, that it will remain in compliance with these revised financial covenants along with other unsecured debt covenants through at least November 6, 2021.*** However, with the continued uncertainty caused by the COVID-19 pandemic, significant risks remain and any material adverse effect on our income and expenses could impact our ability to maintain compliance with our credit facility and bond covenants. Additionally, there can be no assurances of the terms or conditions that any such deleveraging transaction would include or that the Company will be able to consummate such transaction on a timely basis, or at all.

23. The 3Q20 10-Q also stated, regarding disclosure controls and internal control over financial reporting at WPG and WPG L.P.:

> Management of WPG Inc., with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of WPG Inc.'s disclosure controls and procedures. Based on that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that, as of the end of the

period covered by this report, the disclosure controls and procedures of WPG Inc. were effective.

***Changes in Internal Control Over Financial Reporting.*** There have not been any changes in our internal control over financial reporting (as defined in Rule 13a-15(f)) that occurred during the quarter ended September 30, 2020 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

*    *    *

Management of WPG L.P., with the participation of the Chief Executive Officer and Chief Financial Officer of WPG Inc., WPG L.P.'s general partner, evaluated the effectiveness of the design and operation of WPG L.P.'s disclosure controls and procedures. Based on that evaluation, the Chief Executive Officer and Chief Financial Officer of WPG Inc., WPG L.P.'s general partner, concluded that, as of the end of the period covered by this report, WPG L.P.'s disclosure controls and procedures were effective.

***Changes in Internal Control Over Financial Reporting.*** There have not been any changes in our internal control over financial reporting (as defined in Rule 13a-15(f)) that occurred during the quarter ended September 30, 2020 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

24.     On December 15, 2020, WPG filed a Form 8-K with the SEC stating that it had entered into a confidentiality agreement in connection with its discussions with certain debt holders. Specifically, the Company stated:

In connection with discussions with certain of its debt holders with respect to potential strategic or capital markets transactions to enhance the capital structure of Washington Prime Group Inc. (the "Company"), the Company entered into a confidentiality agreement that requires the Company to publicly disclose certain confidential information provided to such counterparties (the "Cleansing Materials") upon the occurrence of certain events. The Company is furnishing the Cleansing Materials as Exhibits 99.1 and 99.2 hereto in satisfaction of its obligations under such confidentiality agreement.

While discussions are ongoing, as of December 15, 2020, the Company had not reached an agreement with respect to the material terms of such a strategic or capital markets transaction and there can be no assurances that such an agreement will be reached in the future for such strategic or capital markets transaction. The latest written term sheet concerning such a transaction, attached as Exhibit 99.2 hereto, contemplated a private exchange offer being made to certain eligible holders of Washington Prime Group, L.P.'s unsecured bonds.

25.     The above statements identified in ¶¶ 20-24 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that WPG's financial condition was deteriorating substantially; (2) that, as a result, there was substantial uncertainty about the Company's ability to meet its capital structure obligations as they became due; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Truth Slowly Emerges

26.     On February 16, 2021, WPG disclosed that its operating partnership, WPG L.P., had "elected to withhold an interest payment of $23.2 million due on February 15, 2021 with respect to WPG L.P.'s outstanding Senior Notes due 2024," and that "WPG L.P. has a 30-day grace period to make the interest payment before such non-payment constitutes an 'event of default.'"  The Company further advised that, in an event of default, certain counterparties to the senior notes "could accelerate the outstanding indebtedness due . . . making such indebtedness due and payable, which would result in a cross-default with respect to some of WPG L.P.'s or the Company's other indebtedness."  Specifically, in a Form 8-K filed with the SEC, the Company stated:

> On February 15, 2021, Washington Prime Group, L.P. ("WPG L.P."), the operating partnership of Washington Prime Group Inc. (the "Company"), elected to withhold an interest payment of $23.2 million due on February 15, 2021 with respect to WPG L.P.'s outstanding Senior Notes due 2024 (the "Notes"). Under the indenture governing the Notes, WPG L.P. has a 30-day grace period to make the interest payment before such non-payment constitutes an "event of default" with respect to the Notes. If an "event of default" should occur, the trustee or the holders of at least 25% of the Notes could accelerate the outstanding indebtedness due under the Notes, making such indebtedness due and payable, which would result in a cross-default with respect to some of WPG L.P.'s or the Company's other indebtedness.

> WPG L.P. has engaged Kirkland & Ellis LLP as legal counsel and Guggenheim Securities, LLC as investment banker to assist the Company and its subsidiaries

with respect to their continuing discussions with certain counter parties as well as other lenders within the Company's capital structure. The Company intends to use the aforementioned 30-day grace period to further said discussions. The Company expects to continue to operate in the ordinary course.

27.     On this news, the Company's stock price fell $4.59, or 38%, to close at $7.49 per share on February 16, 2021, on unusually heavy volume.

28.     Then, on March 4, 2021, *Bloomberg* reported that WPG "is preparing a potential bankruptcy filing as time runs out to avert default after it skipped an interest payment on its debt, according to people with knowledge of the plans." The article stated, in relevant part:

> Mall owner Washington Prime Group is preparing a potential bankruptcy filing as time runs out to avert a default after it skipped an interest payment on its debt, according to people with knowledge of the plans.
>
> *           *           *
>
> Columbus, Ohio-based Washington Prime has said the impact from the Covid-19 pandemic could affect its ability to comply with debt covenants and continue operations, or remain a going concern "under certain circumstances." It said in November that it was "actively negotiating" with debt holders to cut borrowings.
>
> At that time, Chief Executive Officer Lou Conforti emphasized that bankruptcy was not on the table.
>
> "It's important to note that this action, and I would like everybody listen up, in no way shape or form has anything to do with a bankruptcy or a corporate restructuring and if anything, will serve as a testament to our operational abilities," Conforti said in a conference call with investors.

29.     On this news, the Company's stock price fell $3.77, or 60%, to close at $2.51 per share on March 4, 2021, on unusually heavy volume.

30.     On March 16, 2021, after the market closed, WPG disclosed that it had entered into a forbearance agreement with respect to the Senior Notes due in 2024 and stated there was substantial doubt as the Company's ability to continue as a going concern. The Company confirmed that it had engaged in discussions for a financial restructuring. In a press release announcing its fourth quarter 2020 financial results:

As reported on February 16, 2021, Washington Prime Group, L.P. ("WPG L.P."), the operating partnership of the Company, elected to withhold the $23.2 million interest payment that was due on February 15, 2021 (the "Interest Payment") with respect to WPG L.P.'s Senior Notes due 2024 (the "Notes") and, as provided for in the indenture governing the Notes, to enter the 30-day grace period to make such payment. WPG L.P. does not expect to make the Interest Payment on the last day of such 30-day grace period. WPG L.P.'s failure to make the Interest Payment will result in an "event of default" on March 17, 2021 with respect to the Notes, which will result in a cross default under each of its corporate credit facilities (together, the "Credit Agreements"). While the event of default is continuing under the indenture governing the Notes, the Trustee or the holders of at least 25% in principal amount of the Notes may declare the Notes to be due and payable immediately. While the event of default is continuing under each of the Credit Agreements, the applicable administrative agent may, and shall upon the direction of the requisite lenders, declare the loans thereunder to be immediately due and payable.

On March 16, 2021, WPG L.P. entered into a forbearance agreement (the "Notes Forbearance Agreement") with certain beneficial owners (the "Forbearing Noteholders") of more than 67% of the aggregate principal amount of WPG L.P.'s Notes. Pursuant to the Notes Forbearance Agreement, among other things, the Forbearing Noteholders have agreed to forbear from exercising any rights and remedies under the indenture governing the Notes with respect to the default or event of default resulting from the nonpayment of the Interest Payment, including the failure to pay the Interest Payment by the end of the 30-day grace period (the "Interest Default"). The forbearance period under the Notes Forbearance Agreement ends on the earlier of March 31, 2021 and the occurrence of any of the specified early termination events described therein.

In addition, WPG L.P. and certain of its subsidiaries entered into Forbearance Agreements (the "Bank Forbearance Agreements," and together with the Notes Forbearance Agreements, the "Forbearance Agreements") with respect to the Credit Agreements. Pursuant to the Bank Forbearance Agreements, among other things, each of the forbearing lenders under the applicable Credit Agreement has agreed to forbear from exercising any rights and remedies under the applicable Credit Agreements with respect to the Forbearance Defaults (in each case, as defined in the Bank Forbearance Agreements), including the cross-default resulting from the Interest Default. The forbearance period under each of the Bank Forbearance Agreements ends on the earlier of March 31, 2021 and the occurrence of any of the specified early termination events as described therein. WPG L.P. and certain of its subsidiaries also agreed to additional restrictions in connection with the Forbearance Agreements.

***The Company is continuing to engage in negotiations and discussions to restructure its capital structure. The uncertainty associated with the Company's ability to meet these obligations as they become due raises substantial doubt about the Company's***

*ability to continue as a going concern as defined by generally accepted accounting principles.*

The aforementioned discussions have included negotiations of the terms and conditions of a financial restructuring (the "Restructuring") of the existing debt of, existing equity interests in, and certain other obligations of the Company and certain of its direct and indirect subsidiaries. The Restructuring may need to be implemented in cases commenced under chapter 11 of the United States Bankruptcy Code. Although the Company continues to be open to all discussions with the holders of the Notes and its other stakeholders regarding a potential Restructuring, there can be no assurance the Company will reach an agreement regarding a Restructuring in a timely manner, on terms that are attractive to the Company, or at all. The Company expects to continue to provide quality service to its customers without interruption and work with its business partners as usual during the course of these discussions and any potential transaction.

31.     On March 29, 2021, WPG filed a Form 8-K with the SEC stating that the forbearance period for the Forbearance Agreements had been extended to the earlier of April 14, 2021 and the occurrence of any of the specified early termination events specified in the applicable agreement.

32.     On April 12, 2021, WPG filed a Form 8-K with the SEC stating that the forbearance period for the Forbearance Agreements had been extended to the earlier of April 28, 2021 and the occurrence of any of the specified early termination events specified in the applicable agreement.

33.     On April 27, 2021, WPG filed a Form 8-K with the SEC stating that the forbearance period for the Forbearance Agreements had been extended to the earlier of May 5, 2021 and the occurrence of any of the specified early termination events specified in the applicable agreement.

34.     On May 5, 2021, WPG filed a Form 8-K with the SEC stating that the forbearance period for the Forbearance Agreements had been extended to the earlier of May 12, 2021 and the occurrence of any of the specified early termination events specified in the applicable agreement.

## <u>CLASS ACTION ALLEGATIONS</u>

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise

acquired WPG securities between November 5, 2020 and March 4, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

36. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, WPG's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of WPG shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by WPG or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of WPG; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

41.     The market for WPG's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, WPG's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired WPG's securities relying upon the integrity of the market price of the Company's securities and market information relating to WPG, and have been damaged thereby.

42.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of WPG's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about WPG's business, operations, and prospects as alleged herein.

43. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about WPG's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

44. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

45. During the Class Period, Plaintiff and the Class purchased WPG's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

46. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding WPG, their control over, and/or receipt and/or modification of WPG's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning WPG, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

47.     The market for WPG's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, WPG's securities traded at artificially inflated prices during the Class Period.  On January 27, 2021, the Company's share price closed at a Class Period high of $14.90 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of WPG's securities and market information relating to WPG, and have been damaged thereby.

48.     During the Class Period, the artificial inflation of WPG's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about WPG's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of WPG and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the

Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

49.     At all relevant times, the market for WPG's securities was an efficient market for the following reasons, among others:

(a)     WPG shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, WPG filed periodic public reports with the SEC and/or the NYSE;

(c)     WPG regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     WPG was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50.     As a result of the foregoing, the market for WPG's securities promptly digested current information regarding WPG from all publicly available sources and reflected such information in WPG's share price. Under these circumstances, all purchasers of WPG's securities during the Class Period suffered similar injury through their purchase of WPG's securities at artificially inflated prices and a presumption of reliance applies.

51.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of WPG who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase WPG's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

55.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for WPG's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

56.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about WPG's financial well-being and prospects, as specified herein.

57.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as

alleged herein in an effort to assure investors of WPG's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about WPG and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

58.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

59.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing WPG's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of WPG's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired WPG's securities during the Class Period at artificially high prices and were damaged thereby.

61.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that WPG was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their WPG securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     Individual Defendants acted as controlling persons of WPG within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.     As set forth above, WPG and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**ROBERT J. WAGONER CO., L.L.C.**

/s/ *Robert J. Wagoner*_____
Robert J. Wagoner (0068991)
107 W. Johnstown Road
Gahanna, Ohio 43230
Telephone: (614) 796-4110
Facsimile: (614) 796-4111
Email: bob@wagonerlawoffice.com
*Attorney for Plaintiff*

and

**POMERANTZ LLP**

/s/ *Jeremy A. Lieberman*_____
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
Thomas H. Przybylowski
(*pro hac vice* application forthcoming)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: tprzybylowski@pomlaw.com
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.

/s/ *Robert J. Wagoner*_____
Robert J. Wagoner (0068991)
*Attorney for Plaintiff*